UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:26-CV-00044-GNS

JOSE GUADALUPE PANIAGUA CALDERON                                           PETITIONER

v.

MIKE LEWIS, Jailer, Hopkins County Jail;
PAMELA J. BONDI, Attorney General of the
United States of America;
KRISTI NOEM, Secretary of the
Department of Homeland Security; and
TODD LYONS, Acting Director,
United States Immigration and Customs Enforcement                          RESPONDENTS

**ORDER**

This matter is before the Court on the Petitioner's Petition for Writ of Habeas Corpus (DN 1).

Petitioner Jose Guadalupe Paniagua Calderon ("Paniagua Calderon"), who is a native and citizen of Mexico, has a clean criminal record and ties to his community. (Pet. ¶ 3, DN 1). Resp'ts' Resp. Show Cause Order Ex. 1, at 2, DN 5-1). In July 2019, he was inspected and admitted into the United States with a H2A visa valid until October 15, 2019, but Paniagua Calderon overstayed his visa. (Pet. ¶ 1; Resp'ts' Resp. Show Cause Order Ex. 1, at 2).

On December 4, 2025, he was detained after a traffic stop by Immigration and Customs Enforcement ("ICE") officers in Washington state. (Pet. ¶¶ 27-31). Paniagua Calderon alleges that the officers broke the driver's window in his SUV and pointed guns at his head. (Pet. ¶ 27). He claims that shattered glass entered his left ear. (Pet. ¶ 27). The officers pulled him out of the vehicle and shoved him against it. (Pet. ¶ 29). One of the officers then drove the vehicle away, running over Paniagua Calderon's foot, and the officers had to carry him to an ICE vehicle for

transport. (Pet. ¶¶ 30-31). At the time of the traffic stop, there was no warrant for his arrest. (Pet. ¶ 32). Paniagua Calderon was subsequently served with a Notice to Appear charging him with remaining beyond his authorized stay. (Pet. ¶ 40; Resp'ts' Resp. Show Cause Order Ex. 1, at 2-4).

Paniagua Calderon did not receive immediate medical care for his injuries, and he was subsequently transferred to detention centers in Portland, Oregon; Tacoma, Washington; El Paso, Texas; and Brazil, Indiana. (Pet. ¶¶ 34-37). He is currently being housed at the Hopkins County Jail. (Pet. ¶ 38).

On January 15, 2026, an immigration judge ordered Paniagua-Calderon's release on a $7,000 bond, but the Department of Homeland Security ("DHS") reserved its right to appeal. (Pet. ¶ 43; Resp'ts' Resp. Show Cause Order Ex. 3, at 2-3, DN 5-3). His family's efforts to pay the bond via ICE CeBonds were unsuccessful because DHS was purportedly appealing the determination. (Pet. ¶ 44; Martinez Decl. ¶ 3, Jan. 27, 2026, DN 1-5).

His family then flew from Vancouver, Washington, and arrived in Nashville, Tennessee, in the early morning hours of January 16, 2026. (Pet. ¶ 45). Paniagua Calderon's bond counsel, Attorney Yessinia Martinez ("Martinez") informed the family that the bond could be paid at the ICE office in Nashville and that no appeal was pending to preclude release. (Pet. ¶ 46; Martinez Decl. ¶ 5). After the family obtained a cashier's check and presented it at the ICE Nashville office, ICE rejected the bond payment because DHS was appealing the bond determination. (Pet. ¶ 47). The family then contacted Martinez, who informed them that no Notice of Appeal (Form EOIR-26) or Notice of ICE Intent to Appeal Custody Redetermination (Form EOIR-43) had been filed. (Pet. ¶ 48).

That same day, Martinez appeared at the ICE office in Portland, Oregon, to pay the bond. (Pet. ¶ 49; Martinez Decl. ¶ 6). While DHS indicated the bond could be posted, a correction had to be made to the check before it could be accepted. (Pet. ¶ 49; Martinez Decl. ¶ 6). Less than an hour later, when Martinez tendered a new cashier's check, DHS informed him that a Form EOIR-43 was pending, which prevented the posting of bond. (Pet. ¶ 50; Martinez Decl. ¶ 6). At this point, DHS had not filed a Form EOIR-26 or a Form EOIR-43). (Pet. ¶ 51; Martinez Decl. ¶ 6). Later that day, DHS filed a Form EOIR-43 to invoke an automatic stay of the immigration judge's bond determination. (Pet. ¶ 51; Martinez Decl. ¶ 6; Pet. Ex. D, at 1, DN 1-6).

On January 28, 2026, Paniagua Calderon filed the Petition for Writ of Habeas Corpus against Respondents: Mike Lewis ("Lewis"), Jailer, Hopkins County Jail; Pamela Jo Bondi, Attorney General of the United States; Kristi Noem, Secretary of DHS; and Todd Lyons, Acting Director of ICE.[1] (Pet. ¶¶ 18-21). He seeks relief based on violations of substantive and procedural due process rights under the Fifth Amendment, and asserts that the automatic stay regulation is ultra vires. (Pet. ¶¶ 84-95). On January 29, 2026, DHS filed a Notice of Appeal, which incorrectly lists the bond amount imposed by the immigration judge as $15,000. (Pet'r's Reply Show Cause Order Ex. B, at 2, DN 8-5).

A writ of habeas corpus "may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). Section 2241 "is an affirmative grant of power to federal courts to issue writs of habeas corpus to prisoners being held 'in violation of the Constitution or laws or treaties of the United States.'"

---

[1] "In Kentucky, the Jailer—a constitutionally elected county official—has 'custody, rule and charge of the jail' or detention center in his or her county and 'of all persons in the jail.'" *Moore v. Mason Cnty.*, No. 16-185-DLB-CJS, 2018 WL 4211732, at *1 (E.D. Ky. Sep. 4, 2018) (citing Ky. Const. § 99; KRS 71.020). Therefore, as the jailer, Lewis is responsible for the jail or detention center and has custody of any detainee while he or she is incarcerated at that facility.

3

*Rice v. White*, 660 F.3d 242, 249 (6th Cir. 2011) (quoting 28 U.S.C. § 2241(c)). In seeking habeas relief, Paniagua Calderon bears the burden of proving by a preponderance of the evidence that his detention is unlawful. *See Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023); *Lallave v. Martinez*, 609 F. Supp. 3d 164, 171 (E.D.N.Y. 2022).

### A. <u>Exhaustion of Administrative Remedies</u>

The parties dispute whether Paniagua Calderon must exhaust administrative remedies before seeking habeas relief. "[T]he Supreme Court has identified three categories of statutory schemes when deciding if a specific statute contains an issue-exhaustion mandate." *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 746 (6th Cir. 2019) (citing *Sims v. Apfel*, 530 U.S. 103, 107-10 (2000)). These categories are: (i) when a statute expressly requires exhaustion; (ii) when a statute is silent but "permit[s] agencies to adopt regulations detailing their internal claims-processing rules[]"; and (iii) prudential exhaustion—when it is within a court's "sound judicial discretion" to require exhaustion "[w]hen Congress has not clearly required exhaustion." *Id.* at 746-47 (citations omitted). A court may also waive exhaustion when "the legal question is 'fit' for resolution and delay means hardship." *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000) (citing *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148-49 (1967)).

Respondents contend that this case falls within that third category. (Resp'ts' Resp. Show Cause Order 5-7). In the absence of a formal test for prudential exhaustion adopted by the Sixth Circuit, courts in this circuit have applied the analysis in *United States v. California Care Corp.*, 709 F.2d 1241 (9th Cir. 1983), upon which exhaustion may be required when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Id.* at 1248 (citations omitted).

As to the first factor, the Petition asserts that Respondents have violated his constitutional rights relating to the automatic stay imposed while DHS appeals the immigration judge's bond determination. In this instance, agency expertise is not necessary "to generate a proper record and reach a proper decision . . . ." *Id.* at 1248 (citations omitted). Thus, the Court can determine whether Paniagua Calderon's constitutional rights have been violated due to his continued detention.

The second factor recognizes the importance of permitting the administrative process take its course. *See id.* (citations omitted). Nevertheless, Paniagua Calderon has alleged violations of his constitutional rights, and the Court does not have to wait for a decision by the BIA to consider the merits of the Petition. The Sixth Circuit has held that due process challenges usually do not require exhaustion because the BIA cannot review constitutional challenges. *See Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006); *Bangura v. Hansen*, 434 F.3d 487, 494 (6th Cir. 2006).

The final factor considers whether administrative review would likely lead to the agency correcting its own mistakes and preclude the necessity of judicial review. *Cal. Care Corp.*, 709 F.2d at 1248 (citations omitted). While there are important legal distinctions between the numerous other Section 2241 petition cases filed in this Court, the common thread is that Respondents have repeatedly asserted that alien detainees should be held indefinitely without bond pending the resolution of removal proceedings. Therefore, it is not clear that the result of any administrative review could likely lead to Respondents changing their position, thereby "preclud[ing] the need for judicial review." *Id.* (citations omitted). Thus, these factors do not support requiring prudential exhaustion.

Alternatively, the Court finds that exhaustion should be waived because the legal question at issue "is fit for resolution and delay means hardship." *Shalala*, 529 U.S. at 13. On average, bond appeals to the Board of Immigration Appeals ("BIA") take sixth months to resolve. *See Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 779 (E.D. Mich. 2025) (citing *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1245 (W.D. Wash. 2025)). "[B]ecause of delays inherent in the administrative process, BIA review would result in the very harm that the bond hearing was designed to prevent: prolonged detention without due process . . . ." *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 237 (W.D.N.Y. 2019) (internal quotation marks omitted) (citation omitted); *see also Gomes v. Hyde*, 804 F. Supp. 3d 265, 272-73 (D. Mass. 2025) ("The Immigration Judge denied Gomes' request for release on bond on June 12, 2025. Assuming the BIA is processing appeals at the same rate as last year, Gomes' appeal would likely not be resolved until 2026, giving rise to the possibility that he would endure several additional months of detention that may be unlawful. Such a prolonged loss of liberty would, in these circumstances, constitute irreparable harm." (internal citation omitted) (citation omitted)). In addition, the United States will likely seek to deport Paniagua Calderon, and his continued detention makes it more difficult for him to gather evidence and to prepare his case. *See Rodriguez*, 779 F. Supp. 3d at 1254. Under these circumstances, it is appropriate to waive the exhaustion of administrative remedies and address the merits of the Petition. *See Singh v. Lewis*, No. 4:25-CV-00096-RGJ, 2025 WL 2699219, at *3 (W.D. Ky. Sep. 22, 2025); *Lopez-Campos*, 797 F. Supp. 3d at 779; *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425, at *4 (E.D. Mich. Sep. 9, 2025); *Sampiao v. Hyde*, 799 F. Supp. 3d 14, 26 (D. Mass. 2025).

  B. **Merits of Petition**

The Fifth Amendment's Due Process Clause applies to all persons, including non-citizens, regardless of their immigration status. *See A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025); *see also Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (per curiam) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993))). To determine whether a civil detention violates a detainee's due process rights, a court applies the three-part balancing testing articulated in the *Mathews v. Eldridge*, 424 U.S. 319 (1976). The factors to be considered are: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

"Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action. 'It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.'" *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (internal citation omitted) (citing *Youngberg v. Romeo*, 457 U.S. 307, 316 (1982)). "'In our society liberty is the norm,' and detention without trial 'is the carefully limited exception.'" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (citation omitted). "[W]hen assessing the private interest, courts consider the detainee's conditions of confinement, namely, 'whether a detainee is held in conditions indistinguishable from criminal incarceration.'" *Martinez v. Noem*, No. 5:25-CV-01007-JKP, 2025 WL 2598379, at *2 (W.D. Tex. Sep. 8, 2025) (quoting *Günaydin v. Trump*, 784 F. Supp. 3d 1175, 1187 (D. Minn. 2025)).

7

Paniagua Calderon currently being held at the Hopkins County Jail and has been separated from his family for more than two months as he has been moved from facility to facility. DHS has invoked an automatic stay preventing his release, and such a stay does not have a foreseeable end date because ICE may impose an additional discretionary thirty-day stay if the Board of Immigration Appeals ("BIA") fails to resolve the appeal in ninety days. *See Sampiao*, 799 F. Supp. 3d at 31 (citing 8 C.F.R. § 1003.6(c)(5)). If the matter is referred to the Attorney General, she may further stay the case indefinitely pending its resolution. *See* 8 C.F.R. § 1003.6(d). The reality is that Paniagua Calderon likely faces months or even years of detention under the automatic stay. *See Lopez-Campos*, 797 F. Supp. 3d at 779 ("Bond appeals before the BIA, on average, take six months to complete." (citing *Rodriguez v. Bostock*, 779 F. Supp. 3d at 1245)). Because Paniagua Calderon has a current interest in being free from unlawful detention, the first *Mathews* factor strongly favors him. *See Patel v. Tindall*, No. 3:25-CV-00373-RGJ, 2025 WL 2823607, at *5 (W.D. Ky. Oct. 3, 2025); *Singh*, 2025 WL 2699219, at *4 (W.D. Ky. Sep. 22, 2025); *Barrera v. Tindall*, No. 3:25-CV-00541-RGJ, 2025 WL 2690565, at *6 (W.D. Ky. Sep. 19, 2025).

Under the second factor, a court must "assess whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights and the degree to which alternative procedures could ameliorate these risks." *Günaydin*, 784 F. Supp. 3d at 1187. Paniagua Calderon's continued detention is based on a regulation imposing an automatic stay only to detainees who have requested and been granted bond by an immigration judge. *See Sampiao*, 799 F. Supp. 3d at 31 (citing *Garcia Jimenez v. Kramer*, No. 4:25-CV-3162, 2025 WL 2374223, at *3 (D. Neb. Aug. 14, 2025)).

During the bond hearing, the immigration judge exercised independent judgment in determining whether Paniagua Calderon was eligible for release on bond. *See* 8 C.F.R. § 1003.19(a). Notwithstanding that determination, the United States' ability to impose an automatic stay of that decision usurps the role of the immigration judge and compels continued detention of Paniagua Calderon. "In effect, the automatic stay provision renders the [i]mmigration [j]udge's bail determination an empty gesture." *Ashley v. Ridge*, 288 F. Supp. 2d 662, 668 (D.N.J. 2003); *see also id.* ("[T]he automatic stay provision nullifies the very purpose of giving aliens procedural protections in deportation proceedings. It produces a patently unfair situation by 'tak[ing] the stay decision out of the hands of the judges altogether and giv[ing] it to the prosecutor who has by definition failed to persuade a judge in an adversary hearing that detention is justified.'" (second and third alterations in original) (citation omitted)). Therefore, the Court finds that this second factor also favors Paniagua Calderon.

Under the final factor, the Court must consider the United States' interest in the procedure being challenged and any financial or administration burdens relating to alternative procedures. *See Mathews*, 424 U.S. at 335. "The government does, indeed, have a legitimate interest in ensuring noncitizens' appearance at removal proceedings and preventing harms to the community . . . ." *Sampiao*, 799 F. Supp. 3d at 33 (citing *Hernandez-Lara v. Lyons*, 10 F.4th 19, 32-33 (1st Cir. 2021)). That interest, however, is addressed through the bond determination process by a neutral immigration judge, and in this instance, the immigration judge determined that Paniagua Calderon was eligible and release on bond was appropriate. As a result, "existing statutory and regulatory safeguards adequately serve the governmental interest in promoting public safety." *Günaydin*, 784 F. Supp. 3d at 1190. This final factors weights in favor of

Paniagua Calderon. *See Patel*, 2025 WL 2823607, at *6; *Singh*, 2025 WL 2699219, at *5; *Barrera*, 2025 WL 2690565, at *7.

In sum, all three *Mathews* factors weigh in favor of Paniagua Calderon. His continued detention under the facts of this case violates his due process rights. When individuals have been illegally detained by ICE, courts have ordered their release. *See Patel*, 2025 WL 2823607, at *6; *Barrera*, 2025 WL 2690565, at *7; *see also Roble v. Bondi*, No. 25-CV-3196 (LMP/LIB), 2025 WL 2443453, at *5 (D. Minn. Aug. 25, 2025). "Habeas has traditionally been a means to secure release from unlawful detention . . . ." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020). Consistent with these norms, Respondents must immediately release Paniagua Calderon upon posting of bond with no other conditions beyond those imposed by the immigration judge. *See Martinez-Elvir v. Olson*, No. 3:25-CV-589, 2025 WL 3006772, at *13 (W.D. Ky. Oct. 27, 2025).

Accordingly, **IT IS HEREBY ORDERED** as follows:

1. The Petition for Writ of Habeas Corpus (DN 1) is **GRANTED**. Respondents are directed to release Petitioner Jose Guadalupe Paniagua Calderon from custody immediately upon posting of bond. Respondents shall certify compliance with the Court's Order by filing on the docket no later than **5:00 PM CT on March 4, 2026**.

2. Upon receipt of the notice of compliance, the Clerk shall strike this matter from the active docket.

Greg N. Stivers, Judge  
United States District Court  
February 27, 2026

cc: counsel of record